IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-2183-BH |
| v. | § | |
| | § | |
| JOHN E. POTTER, POSTMASTER | § | |
| GENERAL, UNITED STATES | § | |
| POSTAL SERVICE, | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the District Court's *Order Transferring Case to Magistrate Judge*, filed January 19, 2005, this matter was transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before the Court is *Defendant's Motion to Dismiss and for Summary Judgment* ("Mot.") and *Memorandum of Law in Support of Defendant's Motion to Dismiss and for Summary Judgment* ("Mem."), both filed January 20, 2006. Under N.D. Tex. Civ. R. 7.1(e), Plaintiff's response was due February 9, 2006. He has not responded, however, and Defendant's motion is ripe for determination. After thoroughly reviewing the pertinent pleadings and the applicable law, the Court is of the opinion that the motion to dismiss and for summary judgment should be **GRANTED**.

## I.   BACKGROUND

At the time of the events at issue in this employment discrimination case, Plaintiff was employed by the United States Postal Service as a mail handler. (Mot. App. at 1.) On the night of March 11 to March 12, 1998, Plaintiff, a black male, was working the overnight shift in the re-wrap

section at the Dallas Bulk Mail Center when he had a confrontation with James Fast ("Fast"), a white male. *Id.* at 2.  During the confrontation, Fast turned over a large container which was close to Plaintiff.  *Id.* at 23.  Fast, who was the Manager of Distribution Operations for the Bulk Mail Center, then called Robert Miller ("Miller"), a Supervisor Distribution Operations, a black male, to the scene.  *Id.* at 15.  At the time, Fast was Miller's supervisor, and Miller was Plaintiff's direct supervisor.  When Miller was unable to resolve the dispute between Plaintiff and Fast, a union representative, Albertus Lewis ("Lewis") was called.  *Id.*  Plaintiff and Lewis left the work area and went to Lewis's office.  *Id.* at 134.  Plaintiff remained there for a few hours talking about the confrontation and complaining that he could have been injured by the container.  *Id.* at 135.

On March 13, 1998, while on a family trip, Plaintiff went to a hospital emergency room and received sutures for a laceration on his left leg.  *Id.* at 153.  Plaintiff was also prescribed an antibiotic and advised to have the stitches removed by his family practitioner in seven to ten days.  *Id.*

Plaintiff returned to work on March 16, 1998, the next day he was scheduled to work.  *Id.* at 3.  Plaintiff submitted a "Report of Hazard, Unsafe Condition, or Practice" to Miller.  *Id.*  The report claimed that Fast turned over the container "very close to where [Plaintiff] was sitting" and it "could have hurt me or him."  *Id.* at 8.  In a handwritten note dated March 16, 1998, Plaintiff complained that he had been harassed on March 12 by Fast.  *Id.* at 23-26.  Plaintiff stated that Fast had cursed at him on other occasions.  Plaintiff said that on that night Fast "pull[ed] over a heavy APC, forcefully to the concrete floor and it sounded like a gunshot and it scared the daylights out of me."  *Id.* at 23.  He also stated "[t]hen he stepped into my face and cursed at me using words like you son of a bitch. . . ."  *Id.* at 23-24.  Plaintiff complained that Fast had no people skills or professionalism and abused his authority.  *Id.* at 25-26.

Miller conducted an investigation of the incident and found that Fast had not engaged in an unsafe act. *Id.* During Miller's investigation, he obtained statements from other employees who were present at the time of the incident. *Id.* at 9-13. They confirmed that Fast did overturn the container in Plaintiff's vicinity. *Id.* None reported that the container touched Plaintiff or that Plaintiff was injured. *Id.*

On March 20, 1998, Plaintiff filed a "Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation. *Id.* at 14. Plaintiff claimed that his leg was injured in the altercation with Fast because the container fell on his leg. *Id.* Plaintiff stated that he didn't feel the injury at first. *Id.* Based on the inconsistencies between Plaintiff's previous statements about the incident and the facts as represented in the injury claim, Miller requested that Plaintiff be terminated from employment for fraudulently filing an injury report. *Id.* at 16.

On April 1, 1998, a pre-disciplinary meeting was held. *Id.* at 5, 16. Present were Miller, Plaintiff, and two union representatives. *Id.* At the meeting, Plaintiff was asked why he had not reported his injury earlier. *Id.* Although he maintained that he had not been aware of the injury until after the incident, he failed to explain why he did not report the injury at the same time he filed the unsafe practice form. *Id.* On April 9, 1998, Miller completed a disciplinary-action request form requesting that Plaintiff be terminated, and the form was approved by Fast. *Id.* On May 15, 1998, Miller mailed a Notice of Removal to Plaintiff. *Id.* at 17-19. Plaintiff was advised that he was being terminated for filing a false claim of on-the-job injury. *Id.*

The union filed a grievance on Plaintiff's behalf, which was denied. On August 15, 1998, Plaintiff filed a step 2 appeal of the grievance. *Id.* at 39-44. The labor relations specialist who provided the step 2 decision found that Plaintiff's removal was for just cause and denied the

grievance. *Id.* at 43. That decision noted that "[n]ot once during this 9-10 days [after the incident] did [Plaintiff] mention an on the job injury, going to the emergency room or at the very least telling someone that he was trying to treat the injury himself." *Id.* Plaintiff again appealed the denial of the grievance and the appeal was again denied. *Id.* at 474.

In an affidavit dated December 30, 1998, Plaintiff gave the names of two witnesses who could testify to the fact that Fast pulled the container over in Plaintiff's area. *Id.* at 82. Plaintiff stated that he had no other information to support his allegations. *Id.* at 83.

Plaintiff requested arbitration and an arbitration hearing was held on April 8, 1999. *Id.* at 31, 45. At the hearing, Plaintiff testified that Fast turned the container over onto him. *Id.* at 55. He stated that he did not realize he was bleeding until he arrived at home, six hours later. *Id.* Plaintiff bandaged the wound at home. *Id.* However, the following day the wound began to hurt and he went to the emergency room for stitches. *Id.* Plaintiff testified that he did not report his injury immediately upon returning to work because he had filed two prior injury reports and did not want to file another. *Id.* at 55-56. The arbiter noted numerous inconsistencies in Plaintiff's account and determined that the evidence supported the charge that Plaintiff filed a fraudulent injury claim. *Id.* at 56.

Plaintiff also filed a complaint of discrimination with the EEOC ("EEOC"). *Id.* at 79. Plaintiff stated that on the night of the altercation with Fast, Fast pulled a container full of telephone books down on him and trapped his leg underneath. *Id.* An EEOC Administrative Judge held a hearing and issued her decision on December 2, 2003. *Id.* at 59. She found that Plaintiff was not discriminated against when he was terminated for filing a false injury claim. *Id.* at 76. At the hearing, Plaintiff testified that he and Fast pushed each other during the confrontation and that Fast

was intoxicated. *Id.* at 67. He stated that other employees had to help remove the container from his legs. *Id.* Plaintiff testified that he was aware of his injury immediately and that he went into a restroom to bandage his wound before going to Lewis's office. *Id.* at 65. Another employee testified that he saw Plaintiff in the restroom with a scratch on his leg. *Id.* at 65-66. That employee stated that Plaintiff did not tell him how he was injured and did not ask him for a statement until several years later. *Id.* Lewis testified that during the time that he met with Plaintiff on the night of the altercation with Fast, Plaintiff did not mention being hit or injured by the container, and that Lewis did not notice any injury. *Id.* at 60. Plaintiff testified that Miller told him not to mention the injury at the time he filled out the unsafe practices complaint. *Id.* at 61. The Administrative Judge found Plaintiff's testimony not credible and concluded that Plaintiff's removal was not based on his race or gender. *Id.* at 75-76.

Plaintiff was deposed in this case on November 7, 2005. *Id.* at 87-101. Plaintiff testified that Fast made racial slurs during their confrontation and that he had made such comments several times in the past. *Id.* at 97. Plaintiff also stated that Fast's animus towards him was due to the fact that Plaintiff had seen him in a compromising situation. *Id.* at 100-101.

## II.   ANALYSIS

### A.   *Motion for Summary Judgment*

Defendant moves for summary judgment on Plaintiff's Title VII claims of race and gender discrimination and retaliation. (Mem. at 7-13.)

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are material."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Under Rule 56 of the Federal Rules of Civil Procedure, the court does not have an obligation to "'sift through the record in search of evidence' to support the nonmovant's opposition to the motion for summary judgment." *Crane v. Bowles*, 2004 WL 1057771, at *1 (N.D. Tex. May 6, 2004) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994)). Instead, "the party opposing summary judgment is required to identify specific

evidence in the record and to articulate the precise manner in which that evidence supports his claim." *Id.* (citing *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Where, as here, the nonmovant fails to respond to the motion for summary judgment, such failure does not allow the court to enter a default summary judgment. *Hibernia Nat'l Bank v. Admin. Cent. Sociedad Anonima*, 776 F.2d 1277 (5th Cir. 1985) (citing *John v. La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709 (5th Cir. 1985)). However, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). In addition, the movant's evidence may be accepted as undisputed. *Thompson v. Eason*, 258 F. Supp. 2d 508, 515 (N.D. Tex. 2003) (citing *Eversly v. Mbank*, 843 F.2d 172, 174 (5th Cir. 1988); *Bookman*, 945 F. Supp. at 1002).

## 1.    Title VII Framework

Title VII's burden-shifting paradigm is well established. "First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998).   A plaintiff may establish a prima facie case of race discrimination through either direct evidence, statistical proof, or the test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 206 (5th Cir. 1998). If the plaintiff makes a prima facie case, "the

burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action." *Id.* "Once the defendant meets this burden of production, the plaintiff must demonstrate that the defendant's proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination." *Id.* "An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces *some* evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Id.* This burden-shifting framework applies to claims for retaliation under Title VII, although the plaintiff must establish "but for" causation instead of pretext. *See Vadie v. Mississippi State University*, 218 F.3d 365, 374 (5th Cir. 2000); *see also Valentine v. Bowsher*, 1998 WL 329364, at *1 (N.D. Tex. June 12, 1998) (applying the *McDonnell Douglas* framework in a Title VII retaliation case).

## 2.    Race and Gender Discrimination

As stated above, Plaintiff may establish a prima facie case of race and gender discrimination through direct evidence, statistical proof, or the *McDonnell Douglas* framework. Plaintiff's complaint does not contain direct or statistical proof of race discrimination. The *McDonnell Douglas* framework, therefore, is the measure of whether there is a genuine issue of material fact regarding his discrimination claim. Because Defendant will not have the burden at trial concerning the elements of Plaintiff's prima facie case, Defendant can meet its summary judgment obligation by pointing the court to the absence of evidence to support Plaintiff's case. *See Keeley v. Cisco Sys.*, 2003 WL 21919771, *3 (N.D. Tex. Aug. 8, 2003) (noting that although the defendant did not explicitly argue that plaintiff had failed to establish a prima facie case, the defendant had satisfied its summary judgment burden by pointing to the absence of evidence to support one prong of the

prima facie case) (citing *Celotex Corp.*, 477 U.S. at 325 (1986)). Once Defendant does so, Plaintiff must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See Keeley*, 2003 WL 21919771 at *3 (citing *Celotex Corp.*, 477 U.S. at 325 (1986); *Little*, 37 F.3d at 1075)). "Summary judgment is mandatory when the nonmoving party fails to meet this burden." *Keeley*, 2003 WL 21919771 at *3 (citing *Little*, 37 F.3d at 1076).

### a.    Prima facie Case

Applying the *McDonnell Douglas* framework to Plaintiff's termination claim, he must make a prima facie showing that he (1) is a member of a protected class; (2) was qualified for his position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, show that others similarly situated were treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)) (other citations omitted). Plaintiff has provided evidence of the first three prongs: he is male, was qualified for his job as a mail handler, and was terminated from employment. With respect to the fourth prong, Plaintiff has not identified evidence in the record showing that he was replaced by someone outside the protected class, or, in the alternative, that similarly situated employees outside of the protected class were treated more favorably. Thus, Plaintiff has failed to show a genuine issue of material fact concerning the existence of a prima facie case of discrimination. However, even if the Court assumes for purposes of this motion that he established a prima facie case, as discussed below, Plaintiff's claim would still fail on the issue of pretext.

### b.    Legitimate Nondiscriminatory Reason

Defendant asserts that Plaintiff was terminated because his supervisor believed Plaintiff had

filed a false injury claim.   (Mem. at 8-9.)   In support of this assertion, Defendant points to documents evidencing Miller's investigation of Plaintiff's unsafe practices claim wherein there was no mention of or witness to an injury; evidence that at the pre-disciplinary hearing Plaintiff refused to explain why he did not report an injury at the same time he filed the unsafe practice form; evidence that Plaintiff did not mention any injury to Lewis in the hours following the incident; and evidence that Plaintiff brought forth no witnesses to support his claim of being injured by the container during the course of the investigation or pre-disciplinary hearing.  *Id.*  In short, Defendant points to record evidence showing that the information before Plaintiff's supervisor at the time of his termination supported the conclusion that Plaintiff's claim of injury was fraudulent.  Defendant has therefore met its burden of production to provide a legitimate, nondiscriminatory reason for terminating Plaintiff.  Because Defendant has met its burden, Plaintiff must raise a genuine issue of material fact that Defendant discriminated against him, either by showing that Defendant's proffered reasons are a pretext for discrimination or by providing direct evidence of discrimination.  *See Okoye,* 245 F.3d at 413 (citing *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 449 (5th Cir. 1996)); *Hall v. Gillman Inc.,* 81 F.3d 35, 37 (5th Cir. 1996).

      c.      **Pretext or Intentional Discrimination**

"An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer,* 138 F.3d 563, 566; *see also Blow v. City of San Antonio, Tex.,* 236 F.3d 293, 297 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000) (holding that such evidence may be circumstantial)).  Whether direct or circumstantial, "the evidence offered to counter

the employer's proffered reasons must be substantial." *Nichols*, 138 F.3d at 566.

Plaintiff points to no evidence indicating that Defendant's stated reasons for terminating him are a pretext for discrimination. Where the plaintiff has offered no evidence to rebut the employer's facially benign explanations, no inference of discrimination can be drawn. *See EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1447-1448 (5th Cir. 1995) (explaining that a plaintiff must tender factual evidence from which a fact-finder could reasonably conclude that the defendant's reasons were pretext for discrimination). Consequently, Plaintiff has failed to show a genuine issue of material fact regarding pretext, and Defendant is entitled to summary judgment on this claim.

### 3.    Retaliation Claim[1]

Applying the *McDonnell Douglas* framework to Plaintiff's claim of retaliation, he must make a prima facie showing that: (1) he engaged in an activity protected under Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.*, 320 F.3d 570, 575 (5th Cir. 2003)). With respect to the first element of a retaliation claim, "[a]n employee has engaged in activity protected by Title VII if []he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

---

[1]Defendant asserts that Plaintiff failed to exhaust his administrative remedies as to his retaliation claim because on his EEO complaint form he did not check the box for retaliation and related documents mention only claims of race and gender discrimination. (Mem. at 6.) However, it is clear from Plaintiff's EEO complaint and the subsequent decision that his primary complaint was that he was discharged in retaliation for making a claim that Fast committed an unsafe act in turning over the container. Therefore, the Court finds that Plaintiff did exhaust his administrative remedies as to his claim of retaliation.

-11-

Plaintiff asserts in his complaint that he participated in a protected activity by filing the unsafe practice report. (Compl. at 6, ¶ 7.) However, contrary to Plaintiff's assertion, the filing of an unsafe practice report is not an activity protected under Title VII. *See Maher v. U.S. Postal Service*, 729 F. Supp. 1444, 1452 (S.D.N.Y. 1990). The form submitted by Plaintiff contained no allegation related to any factor to which Title VII applies. In addition, the Court has reviewed the record and can find no evidence of any instance, other than the filing of the EEO complaint at issue here, where Plaintiff engaged in a protected activity. Thus Plaintiff has failed to present a prima facie case of retaliation, and Defendant is entitled to summary judgment on this claim. Even if Plaintiff had established a prima facie claim of retaliation with respect to his termination, his claim would nevertheless fail because, as discussed in the previous section, he has failed to establish that Defendant's legitimate, nondiscriminatory reasons for terminating him were pretextual.

For the foregoing reasons, Defendant's motion for summary judgment as to Plaintiff's Title VII claims is **GRANTED**.

## B.      *Motion to Dismiss*

### 1.      <u>Dismissal Standard under Fed. R. Civ. P. 12(b)(6)</u>

Pursuant to FED. R. CIV. P. 12(b)(6), a claim for relief may be dismissed for failure to state a claim upon which relief can be granted. Dismissals under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981). Under this standard, a court cannot look beyond the face of the pleadings. *Baker*, 75 F.3d at 196; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000). To avoid dismissal, those pleadings must show specific, well-pleaded facts, not mere conclusory allegations. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The court must accept those well-pleaded

facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). A court cannot dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957); *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

Although Rule 12(b)(6) dismissal is ordinarily determined by whether the facts alleged in the complaint give rise to a cause of action, when a successful affirmative defense appears on the face of the pleadings, dismissal under Rule 12(b)(6) may be appropriate. *Kansa Reinsurance Co. v. Congressional Mtg. Corp. of Tex.*, 20 F.3d 1362, 1366 (5th Cir.1994). "[A] complaint that shows relief to be barred by an affirmative defense... may be dismissed for failure to state a cause of action." *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citations omitted).

## 2.    Tort Claim

Defendant asserts that to the extent Plaintiff purports to raise a tort claim, he has failed to exhaust his administrative remedies as to that claim, and it should therefore be dismissed.[2] (Mem.

---

[2] Defendant moves for dismissal for lack of subject matter pursuant to Rule 12(b)(1). Some courts within the Fifth Circuit have found that failure to exhaust administrative remedies deprives the court of jurisdiction over a plaintiff's Title VII claims and dismissed such claims pursuant to Rule 12(b)(1). *See, e.g., Piper v. Veneman*, 2004 WL 1920956, at *4 (E.D. La. Aug. 26, 2004)(citing *Randel v. U.S. Dep't of the Navy*, 157 F.3d 392, 395 (5th Cir. 1998) and *Tolbert v. United States*, 916 F.2d 245, 247-248 (5th Cir. 1990)(per curiam)); *Otokunrin v. MBNA Technology*, 2004 WL 833599 at *2 (N.D. Tex. Apr. 16, 2004) (relying on *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997)). Others, however, have held that exhaustion of administrative remedies is a statutory condition precedent, not a jurisdictional prerequisite, and that motions to dismiss on this basis are properly addressed under 12(b)(6). *See, e.g., Kojin v. Barton Protective Svcs.*, 339 F. Supp. 2d 923, 925 (S.D. Tex. 2004); *Hayes v. MBNA Technology, Inc.*, 2004 WL 1283965, at *3, n.6 (N.D. Tex. June 9, 2004); *McGarrah v. Kmart Corp.*, 1999 WL 455716, at *2, n.2 (N.D. Tex. Jul. 2, 1999). This apparent split in the Fifth Circuit was noted in *Gates v. City of*

at 4.)  In his complaint, Plaintiff alleges that his dismissal was unlawfully motivated by "personal malice" and he complains of racial slurs directed at him by Fast.  (Compl. at 7.) Although it is not clearly apparent from the face of the complaint that Plaintiff intended to raise a tort claim, in an abundance of caution, the Court will assume such a claim has been raised and address Defendant's motion to dismiss that claim.

The Federal Tort Claims Act, 28 U.S.C. § 2671, *et. seq.,* provides a limited waiver of the United States' sovereign immunity for tort claims brought against the federal government. *United States v. Kubrick,* 444 U.S. 111, 123-24 (1979); *Rayonier, Inc. v. United States,* 352 U.S. 315, 319 (1956); *McGuire v. Turnbo,* 137 F.3d 321, 324 (5th Cir. 1998).  The waiver's express and specific terms define the Court's subject matter jurisdiction. *Honda v. Clark,* 386 U.S. 484 (1967); *United States v. Sherwood,* 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.") (citations omitted).  To successfully sue under the FTCA, "a plaintiff must name the United States as the sole defendant." *McGuire,* 137 F.3d 321 at 324.  More importantly, for purposes of jurisdiction "[a] prerequisite to suit under the FTCA is exhaustion of available administrative remedies." *Madeiros v. Potter,* 2004 WL 396070, *3, n.3 (N.D. Tex. Feb. 2, 2004) (citing 28 U.S.C. § 2675(a)); *see also Williamson v. United States Dep't of Agriculture,* 815 F.2d 368, 378 (5th Cir. 1987).

---

*Dallas,* 1997 WL 405144, at *2, n.1 (N.D. Tex. July 15, 1997) (comparing *Pinkard v. Pullman-Standard, Inc.,* 678 F.2d 1211, 1215 (5th Cir. Unit B 1982) (per curiam) (exhaustion of administrative remedies is a condition precedent to filing a Title VII claim) with *Tolbert,* 916 F.2d at 2471990) (exhaustion is a jurisdictional prerequisite to filing suit) and following the rule that one panel may not overrule a prior panel).  More recently, the Fifth Circuit has stated that "Rule 12(b)(6) forms a proper basis for dismissal for failure to exhaust administrative remedies." *Martin K. Eby Construction Co., Inc. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467, n.4 (5th Cir. 2004) (citing *Taylor v. United States Treasury Dep't.,* 127 F.3d 470, 476-78 & n.8 (5th Cir. 1997)).  Accordingly, Defendant's motion will be analyzed under the more deferential 12(b)(6) standard. *See Gates,* 1997 WL 405144, at *1 (analyzing 12(b)(1) motion for failure to exhaust as a 12(b)(6) motion).

Plaintiff does not allege in his complaint that he has complied with the FTCA's

exhaustion requirement, nor do the pleadings affirmatively show that Plaintiff has met his

burden to establish federal court jurisdiction over any tort claim. *See Madeiros*, 2004 WL

396070 at 3 (dismissing federal employee's FTCA claim for failure to allege compliance with

the FTCA's exhaustion requirement). Because Plaintiff has failed to exhaust his administrative

remedies with regard to his tort claim, Defendant's motion to dismiss Plaintiff's tort claim is

**GRANTED**.

3.    **First Amendment Claim**

Defendant also moves to dismiss Plaintiff's First Amendment claim.[3] (Mem. at 3-4.)

In his complaint, Plaintiff alleges his employment was unlawfully terminated due to his exercise

of free speech rights. (Compl. at 7.)

Plaintiff's complaint alleges that his termination was unlawfully motivated by his

exercise of free speech rights, in violation of the First Amendment of the Constitution. (Compl.

at 7.)  Where a federal employee claims his First Amendment rights have been violated by a

superior, the Civil Service Reform Act of 1978 ("CSRA") provides the sole remedy. *Bush v.

Lucas*, 462 U.S. 367, 388-90 (1983).  The CSRA requires that federal employees be treated

"with proper regard for their . . . constitutional rights." 5 U.S.C. § 2301(b)(2). It prohibits the

---

[3]Defendant moves to dismiss Plaintiff's constitutional claim for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1), noting that Title VII provides the exclusive remedy for employment discrimination claims raised by federal employees. While this is true, the Court interprets Plaintiff's First Amendment claim as asserting that he was fired for speaking out about Fast's unsafe act. Because it has jurisdiction to consider such claims, and because it appears from the pleadings that Plaintiff cannot state a claim for relief under the First Amendment , the Court *sua sponte* considers Plaintiff's First Amendment allegations under Rule 12(b)(6). A court may dismiss an action on its own motion under Rule 12(b)(6) "'as long as the procedure employed is fair.'" *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (quoting CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 301 (2d ed.1990)). Even if the plaintiff is not given prior notice of the Court's intent, there is no error "if the plaintiff has alleged his best case, or if the dismissal [is] without prejudice." *Id.*

taking of any personnel action that violates the CSRA's principles and provides federal employee with remedies against prohibited personnel practices.  5 U.S.C. § 2302(b); 5 U.S.C. § 1214.  In *Bush*, the Supreme Court held that "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, . . . it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." *Id.* at 368.

Because the CSRA provides the sole remedy for claims brought by federal employees who are subject to its protections, Plaintiff's First Amendment claim does not state a claim upon which relief can be granted.  Accordingly, this claim is **DISMISSED** pursuant to FED. R. CIV. P. 12(b)(6).

## III.   CONCLUSION

For the foregoing reasons, *Defendant's Motion to Dismiss and for Summary Judgment*, filed January 20, 2006, is **GRANTED**.  Plaintiff's Title VII claims are **DISMISSED** with prejudice. Plaintiff's tort and constitutional claims are **DISMISSED** without prejudice pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**SO ORDERED**, on this 7th day of April, 2006

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

-16-